# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **TERRANCE L. WILLIS,** | |
| Plaintiff, | Case No. 09 C 2944 |
| v. | |
| **GERARDO ACEVEDO, Warden, Hill Correctional Center,** | Hon. Harry D. Leinenweber |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Terrance Willis's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 regarding his conviction in Illinois state court in case no. 94 CR 21185. For the following reasons, Willis's petition is **denied**.

### I. BACKGROUND

#### A. Facts

This case arises out of an incident that occurred on July 27, 1994, in which Terrance Willis ("Willis"), the petitioner, a member of the Black Stones street gang, allegedly fired a gun at Tyrone Rush ("Rush") and Demetrious McTizic ("McTizic"), former members of the rival Gangster Disciples street gang. Rush and a friend, Deandre Bishop ("Bishop"), had driven in Rush's car to a location in Chicago to pick up McTizic. Bishop went inside to get McTizic

while Rush waited in the car; two men (one of whom Rush knew to be Willis) approached the car. Rush recognized Willis because they had once lived in the same neighborhood. Willis asked Rush whether he was a member of the Gangster Disciples, which Rush denied. Rush then saw Bishop and McTizic approaching the car when a group of 7 to 10 young men descended upon them. Bishop jumped onto the trunk of the car, and the group of young men began to hit McTizic on the head.

Rush testified that he saw Willis fire a gun at the car and shatter the window; pieces of glass hit Rush in the face. Rush began to drive away slowly, waiting for McTizic, who fell in the street. Rush and Bishop testified that they saw Willis stand over McTizic as he lay in the street and shoot downward at him. Rush drove off and collided with another vehicle on the next block, causing Bishop to fall off the car.

After the accident, Bishop identified Willis to the police as the shooter and told them that Willis had been the only person with a gun. The next day, Rush told police that Willis had been wearing green pants and a shirt with a red stripe; he identified Willis in a lineup at police headquarters. McTizic had been shot five times: twice in the abdomen, once in the shoulder, once in the ear, and once in the elbow.

**B. Procedural History**

***1. Trial***

Willis was tried to a jury and convicted of two counts of attempted murder in the first degree and one count of armed violence. He was sentenced to 40 years in prison for the first attempted murder count (regarding McTizic). The 40-year sentence had been extended by the trial court's finding that the crime was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. The second attempted murder count (regarding Rush) resulted in a consecutive 10-year sentence. Willis received a 30-year sentence for the armed violence count, to be served concurrently with the first attempted murder count.

***2. Direct Appeal***

On direct appeal, Willis raised only one issue that is repeated in his present petition – that the evidence was insufficient to support the conviction. The Illinois Appellate Court affirmed. Willis filed a Petition for Leave to Appeal ("PLA") in the Illinois Supreme Court, again raising the sufficiency of evidence claim. The petition was denied.

***3. Pro Se State Post-Conviction Motion***

Willis filed a *pro se* post-conviction petition in state court in 1998, raising the following claims that are relevant to the present petition:

(1) Trial counsel was ineffective for failing to call LaVonia Noble as a witness;

(2) Trial counsel was ineffective for failing to investigate Willis's injury from a gunshot wound to the lower leg, which would have prevented him from committing the crime;

(3) Trial counsel was ineffective for denying Willis his right to testify;

(4) The trial court erred in not granting a mistrial when it learned that a juror had read a newspaper article about the case; and

(5) Appellate counsel was ineffective for failing to raise these issues on direct appeal.

The trial court dismissed the petition, and Willis appealed, raising only the claims regarding failure to call LaVonia Noble ("Noble") and the denial of his right to testify. After the U.S. Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), Willis filed a supplemental claim that his consecutive and extended term sentences violated *Apprendi*. The Illinois Appellate Court held that Willis had stated a constitutional claim regarding

his right to testify and remanded for an evidentiary hearing. The court affirmed the dismissal of the ineffectiveness claim regarding Noble, without prejudice for Willis to restate his claim. The court vacated Willis's extended term sentence on the first attempted murder count as violative of *Apprendi*, but held that *Apprendi* did not apply to his consecutive sentences.

Willis filed a PLA in the Illinois Supreme Court, raising only the *Apprendi* claim, which was denied. Meanwhile, the State filed a PLA, arguing that the appellate court erred in holding that *Apprendi* applied retroactively to Willis's case. The Illinois Supreme Court denied the PLA, but issued a supervisory order directing the appellate court to vacate its judgment and reconsider the case in view of Illinois Supreme Court precedent holding that *Apprendi* did not apply retroactively. The appellate court again held that Willis had stated a viable claim regarding his right to testify, declined to readdress the issue regarding Noble as a witness, and held that the *Apprendi* claim was without merit because the *Apprendi* rule did not apply on collateral review.

### *4. Amended State Post-Conviction Motion and Evidentiary Hearing*

Willis's appointed counsel filed an amended post-conviction petition. It repeated the ineffective assistance claims based on

Willis's right to testify, the failure to call Noble as a witness, and the failure to investigate Willis's leg injury. It again raised a claim regarding the trial court's failure to investigate a juror who read a newspaper article about the case. The amended petition raised, for the first time, claims that (a) trial counsel was ineffective for failing to investigate the testimony of Felicia Metcalf ("Metcalf"), Willis's girlfriend, who allegedly would have testified that Willis was home with her at the time of the shooting; and (b) one of the jurors, a former gang member, made biased statements during deliberation that prejudiced the jury.

After an evidentiary hearing, at which both Lavonia Noble and Willis's trial counsel testified, the court denied Willis's post-conviction claims. Willis appealed, raising three claims of ineffective assistance of counsel: those regarding LaVonia Noble's testimony; the investigation of Willis's leg injury (and the testimony of Dr. Alejos, the physician who treated the injury); and Willis's right to testify. The Illinois Appellate Court affirmed.

Willis filed a PLA in the Illinois Supreme Court, raising only the claim that trial counsel was ineffective for failing to investigate adequately and present the testimonies of Dr. Alejos and LaVonia Noble. The Court denied the PLA on September 24, 2008, at which time Willis had exhausted his state court remedies. He

filed this timely Petition for Writ of *Habeas Corpus* in this Court on May 14, 2009.

### C. Issues

Willis's habeas petition raises the following issues:

1. Trial counsel was ineffective for failing to call LaVonia Noble as a witness;

2. Trial counsel was ineffective for failing to call Felicia Metcalf as a witness;

3. Trial counsel was ineffective for failing to investigate Willis's injury from a gunshot wound to the lower leg, especially in failing to investigate Dr. Alejos' testimony;

4. Trial counsel was ineffective for failing to inform Willis of his right to testify;

5. The trial court erred in failing to investigate when it learned that a juror had read a newspaper article about the case;

6. The trial court erred in failing to investigate when it learned that a juror who was a former gang member had presented biased information to the jury;

7. Appellate counsel was ineffective for failing to properly argue the issues raised on direct appeal and omitting other issues;

8. Willis's extended term and consecutive sentences violated *Apprendi*; and

9. The evidence was insufficient to support the conviction.

## II. **STANDARD OF REVIEW**

Under 28 U.S.C. § 2254(d), Willis's petition may be granted only if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." This Court must presume the correctness of State court determinations of fact unless rebutted by the petitioner through clear and convincing evidence. 28 U.S.C. § 2254(e).

## III. **DISCUSSION**

### A. Procedurally Defaulted Claims (Claims 2,4,5,6,7)

#### *1. Failure to Pursue Claims Through One Round of State Court Review*

The State of Illinois argues that certain issues raised in this petition are procedurally barred because Willis failed to raise them on direct or post-conviction review and pursue them through one complete round of state court review. *See Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir., 1995). "One complete round" of state court review includes presentation of the claims to the

state's highest court, even when that court has discretion not to hear the claims. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999).

On inspecting the record, the Court finds that Willis's current Claims 2, 4, 5, 6, and 7 were never carried through one complete round of direct or post-conviction review all the way to the Illinois Supreme Court. Willis first raised Claim 2, failure to call Felicia Metcalf, in his amended post-conviction motion, but he failed to raise the claim when he filed his PLA on that motion to the state supreme court. Willis brought up Claim 4, regarding his right to testify, in both his original and amended post-conviction motions, but he failed to raise the claim in either of his two PLA's on those motions.

Similarly, Claim 5, regarding the juror who read a newspaper account of the case, Claim 6, regarding the former gang member on the jury, and Claim 7, regarding ineffective assistance of appellate counsel, were raised in either the original or amended post-conviction motions, but were never mentioned in either of the PLA's filed after the denial of those motions. Thus, the Illinois Supreme Court never had a chance to consider these claims. Therefore, Willis cannot be said to have exhausted his state court remedies on these claims, which is a prerequisite for federal

habeas corpus review of state court decisions. *See* 28 U.S.C. § 2254(b).

## *2. "Cause and Prejudice" Exception*

Willis might still be able to seek a hearing in this Court on these claims by showing (1) some external cause that prevented him from raising the claims and (2) actual prejudice from the failure to obtain review on the merits. *See, Murray v. Carrier*, 477 U.S. 478, 485, 488 (1986). While Willis might argue that the "ineffectiveness of appellate counsel" that he claims in his petition (Claim 7) was the external impediment that caused his default, Willis is procedurally defaulted on the ineffectiveness of appellate counsel claim because he failed to carry it through one complete round of state court review.

A procedurally defaulted ineffective assistance of counsel claim may not serve to excuse another procedurally defaulted claim, unless a petitioner can demonstrate external cause and actual prejudice in regard to the ineffective assistance claim. *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000). Willis makes no effort to demonstrate the necessary cause and prejudice. In fact, his conclusory claim of ineffective assistance of appellate counsel ("[A]ppellate counsel . . . did not clearly or effectively argue the petitioner's case for reversal [and] omitted clear arguments

for reversal, a new trial or a reduced sentence.") lacks any statement of specific grounds or supporting facts. *See,* Rule 2(c)(2) of Rules Governing Section 2254 Cases.

The Court therefore finds that Willis's procedural defaults may not be excused by the "cause and prejudice" exception.

### 3. *"Miscarriage of Justice" Exception*

Another exception to the procedural default rule exists where review is necessary to correct a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish a fundamental miscarriage of justice, a petitioner must establish that, in light of new evidence, it is more likely than not that a reasonable jury would not have convicted him. *House v. Bell*, 547 U.S. 518, 537 (2006). Willis alleges no new evidence to suggest that he is actually innocent, so this exception is not available to him.

The Court therefore dismisses Willis's Habeas Claims 2, 4, 5, 6, and 7 due to procedural default. *See Murray*, 477 U.S. at 485.

### B. Trial Counsel's Alleged Ineffectiveness for Failing to Call LaVonia Noble as a Witness (Claim 1)

LaVonia Noble lived about five houses away from the scene of the crime. She stated in an affidavit that she was lying on her bed on the day of the crime when she heard shots outside. She ran

to her window, where she saw a man lying in the street and a man in tan clothes standing over him. She saw the man in tan clothes run across the street, reach under a parked car, and then run away. Presumably, the man could not have been Willis, who was described by other witnesses as wearing green pants and a shirt with a red stripe on that day. When police arrived, she told them about the man in tan clothing and offered to point him out, but instead, the police arrested Willis. Willis's attorney received contact information for Noble and spoke to her by phone. The attorney decided not to call Noble as a witness, however, after he and his investigators determined that her house was too far away from the crime scene and its sight lines too obstructed by foliage for Noble to have had a clear view of the crime.

In an affidavit filed six years after her first one, Noble added a new twist – that the object that the man in tan clothing had hidden was shiny and appeared to be a gun. At Willis's evidentiary hearing, she admitted that she did not see the shooting and did not know if the shiny object she saw was a gun. She admitted that she did not look under the car to see if the shiny object was there. It is not clear whether she told the police about the shiny object and, if so, why the police did not look under the car for the object. An investigator for the State who

interviewed Noble said that she never mentioned seeing a gun or shiny object.

After hearing testimony from both Noble and Willis's attorney at an evidentiary hearing, the trial court concluded that Willis had not overcome the presumption that his attorney had employed reasonable trial strategy in deciding not to call Noble. The court noted that the trial attorney was "highly credible," that Noble's testimony was inconsistent with her affidavits, and that the affidavits were at variance with each other. The state appellate court, in upholding the trial court, noted that Willis's attorney had considered Noble's vantage point, the fact that she did not see the actual shooting, and that she had never said she could identify the shooter.

In order to establish a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the defendant was prejudiced by counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In order to grant relief on Willis's claim of ineffective assistance of counsel, this Court would have to find the state court's application of federal law, not merely incorrect, but objectively unreasonable. *See, Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

The state court's application of the law, however, seems entirely reasonable. Willis failed on the first prong of the *Strickland* test because he did not establish that his counsel's performance fell below an objectively reasonable standard. Noble's testimony was not especially probative because she did not see the shooting and it wasn't clear from her original statements (before she added the detail about the shiny object six years later) if the person she saw standing over the victim and running away could have been the shooter. Since 7 to 10 young men were seen to have attacked McTizic, the man in tan clothes could have been any one of them, but would not necessarily have been the shooter. Furthermore, the poor view of the crime scene from her house made her an easily impeachable witness. It was a reasonable trial strategy for the defense to concentrate instead on attempting to demonstrate the weakness of the State's case. For these reasons, the Court denies Willis's claim of ineffective assistance regarding trial counsel's handling of LaVonia Noble as a witness.

**C. Trial Counsel's Alleged Ineffectiveness for Failing to Investigate Willis's Injury from a Gunshot Wound and Failing to Investigate Dr. Alejos' Testimony (Claim 3)**

Willis's post-conviction claim in state court included an affidavit from Dr. Rolando Alejos stating that he had treated Willis for a gunshot wound to his lower left leg on July 25, 1994

- 14 -

– two days before the crime at issue here. Dr. Alejos stated that Willis would have had difficulty walking for some time after the shooting and that he would have been limping two days after receiving the wound. Willis claims that his trial counsel was ineffective for failing to investigate Dr. Alejos' testimony because it would have cast doubt on Willis's physical ability to have committed the crime.

At the evidentiary hearing in state court, Willis's trial attorney said that Willis had told him about his leg injury. The attorney decided not to pursue this line of inquiry, however, because the testimony of witnesses at the crime scene was that the shooter had been standing over the victim. As there were no accounts of the shooter running, it would have been meaningless to establish Willis's inability to run. Furthermore, Willis testified at the evidentiary hearing that there was nothing wrong with his hands.

The trial court found that the attorney's decision not to follow up on the evidence of leg injury was a reasonable trial strategy. As the Court can find nothing unreasonable in that conclusion, Willis's claim for relief on this score fails.

### D. Alleged *Apprendi* Violations (Claim 8)

Willis argues that his sentence for the attempted murder count regarding McTizic, which was extended based on judicial fact-finding, violates *Apprendi*. He also argues that the judge's decision to make the attempted murder count regarding Rush consecutive to the first count is an *Apprendi* violation.

Both arguments fail because *Apprendi* cannot be applied retroactively to cases that were final before *Apprendi* was decided. *See Lambert v. McBride*, 365 F.3d 557, 562 (7th Cir., 2004). Willis's conviction became final in February 1999, when the Illinois Supreme Court denied the PLA from his direct appeal. *Apprendi* was decided the following year.

### E. Insufficiency of the Evidence (Claim 9)

Willis's final claim is that the evidence was insufficient to support the conviction because the State's witnesses were not credible and because Willis had alibi evidence to show that he did not commit the crimes.

The standard for analyzing sufficiency of the evidence claims is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Court's task, then, is to consider whether the evidence presented by the State,

when taken in the light most favorable to the State, could have persuaded a rational trier of fact to have found the essential elements of the crimes of which Willis was convicted beyond a reasonable doubt.

Under Illinois law, a person commits attempted first degree murder when he (1) performs any act which constitutes a substantial step toward killing an individual and (2) intends to kill or do great bodily harm to that individual, or knows that his acts create a strong probability of death or great bodily harm. 720 Ill. Comp. Stat. 5/8-4(a), 5/9-1(a)(1)-(2). The State presented the eyewitness testimony of Tyrone Rush, who said he saw Willis shoot at Rush's car while he was in it, shattering the window. Both Rush and Deandre Bishop testified that they saw Willis stand over McTizic and shoot him. Bishop testified that Willis was the only person he saw with a gun. This evidence, if believed by a reasonable trier of fact, would be sufficient to establish that Willis took substantial steps toward killing Rush and McTizic. The requisite intent or knowledge may be reasonably inferred from Willis's actions.

Willis argues that the witnesses were unreliable, but federal courts do not reevaluate witness credibility on habeas review. *See, Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Willis also

argues that he had alibi evidence that was never presented, but a sufficiency analysis deals only with evidence that was actually presented at trial. Willis's claim therefore fails.

## IV. CONCLUSION

For the reasons stated herein, Willis's petition for Writ of *Habeas Corpus* is **denied**.

**IT IS SO ORDERED.**

                                              Harry D. Leinenweber, Judge
                                              United States District Court

**DATE:** March 1, 2010